John DARGER, d/b/a Custom Drilling,
Plaintiff and Respondent,

v.

Elwood L. NIELSEN, and Park West
Village, Inc., a Utah Corporation,
Defendant and Appellant.

No. 16235.

Supreme Court of Utah.

Dec. 27, 1979.

W. Scott Barrett of Barrett & Mathews,
Logan, for defendant and appellant.

Raymond Scott Berry, Salt Lake City, for
plaintiff and respondent.

WILKINS, Justice:

Plaintiff brought action against Defendant Park West Village, Inc. and against its president, Elwood L. Nielsen, personally, to foreclose a mechanic's lien, and for judgment in the amount due and unpaid under a contract to drill a water well. Defendant Park West Village, Inc. counterclaimed, praying for damages for breach of contract on the part of Plaintiff. The District Court for Summit County, sitting without a jury, dismissed the foreclosure action and the action against Elwood L. Nielsen, awarded judgment to plaintiff against Park West Village, Inc., and denied relief to that defendant on its counterclaim. Defendant Park West Village, Inc. (hereafter referred to as "defendant") appeals, requesting that the judgment be reversed, and that it be granted judgment on its counterclaim.

On August 15, 1977, plaintiff entered into two contracts with defendant, whereby plaintiff agreed to drill a well on property owned by defendant. The first contract was for a well 16 inches in diameter and 100 feet deep. This contract provided for a charge of $250 for moving plaintiff's equipment onto the property, and a drilling charge of $50 per foot, with a proviso that the charge would be $60 per hour if plaintiff encountered bedrock, lost tools in the hole, or met "unexpected conditions causing hardship." There was also a provision for $200 per day standby time "if owner orders a temporary cessation of drilling for any reason whatsoever." The second contract was for a 12-inch well at the bottom of the first well, to be drilled at $30 per foot, with the same hardship and standby clauses as the first contract. Payment was to be made partly in cash, and partly in credit toward payment for undesignated real property. Consequently, the statements sent out by plaintiff showed two amounts— one amount to be paid in cash, another to be credited toward real property. Plaintiff began drilling, and almost immediately encountered large boulders, which he considered a hardship. He notified defendant of his intention to charge at the hourly rate, and did in fact bill at $60 per hour. Defendant did not object. However, disputes developed and defendant was slow in making payment. On March 1, 1978, an addendum agreement was entered into whereby plaintiff agreed to drill at a rate of $40 a foot, and defendant agreed to pay $1,000 every two weeks until the well was completed or drilling ceased, the balance "to be in agreeable trade." At this time, defendant paid plaintiff $700 and also paid plaintiff $1,000 on March 15, 1978, pursuant to the addendum agreement. Plaintiff admits receipt of these amounts.

Plaintiff ceased drilling on March 7, 1978, although the well was not completed, and moved his equipment off the site on or about March 23. On March 23, plaintiff submitted a statement demanding payment for all amounts previously shown to be credits toward real property; for 10 days of standby time at $200 per day; and for drilling done from February 21 to March 7, at $60 per hour. Defendant then entered into an agreement with Gardner Drilling Co. to drill the 103 feet necessary to complete the well at $60 per hour plus a $300 fee for moving its equipment to the site.

Defendant alleged plaintiff had abandoned the contract, denied that the mechanic's lien was timely filed, and by counterclaim asked as damages the difference between the amount paid to Gardner and the amount plaintiff agreed to charge under the addendum agreement. The District Court found that plaintiff had abandoned the contracts without sufficient cause and denied foreclosure of the mechanic's lien on that basis, allowing defendant $750 as attorney's fees incurred in defense of the foreclosure action.[1] The District Court also found that the parties by their conduct recognized the hourly charge rather than the charge per foot under the contract. The Court awarded plaintiff judgment as follows: $7,500 for prior unpaid billings (the amounts credited toward purchase of the real estate); $250 move-in charge, never billed or paid; $1,980 for drilling time between February 21 and March 7.

Defendant's counterclaim was dismissed, the Court finding that defendant was not damaged by the abandonment, as defendant had not proved the well would have been completed on a footage basis. Defendant moved to amend the findings of fact and for a new trial, and the Court amended the judgment, reducing it by $1,000 to reflect defendant's payment of March 15, which had not been credited, but denied defendant credit for the $700 payment of March 1, and denied defendant's motion to add a finding with respect to the validity or applicability of the addendum agreement.

■ Defendant cites as error, the Court's failure to credit defendant with the March

---

1. The denial of foreclosure and the award of attorney's fees are not challenged on this appeal, and we do not discuss those issues.

1 payment of $700 and the dismissal of its counterclaim.

A review of the evidence reveals that the March 1 payment was in fact credited against prior amounts billed by plaintiff and that plaintiff was not granted judgment for those amounts. Defendant therefore is not entitled to a reduction of the judgment against it.

■ The Court's dismissal of the counterclaim, however, cannot be sustained. The Court found that defendant did not prove that the well "would have been drilled on a footage basis," but there is no basis in the record for this finding. By the addendum agreement of March 1, 1978, plaintiff agreed to finish the well on a footage basis. The validity of that contract was not challenged at trial. On the contrary, plaintiff's own testimony shows that he viewed that agreement as valid, and the Court made no finding with respect to this agreement.[2]

The Court found that plaintiff had breached the agreement without cause, and defendant is entitled to damages for that breach. The measure of damages for such a breach is the excess of the cost of completing the well, over what defendant would have paid under the contract.[3]

Defendant presented evidence, uncontroverted by plaintiff, that an additional 103 feet were necessary to complete the well, and that the well was completed by Gardner Drilling Co., which was paid $7,095 for the drilling. Plaintiff, by the addendum agreement, agreed to finish the well at a charge of $40 a foot, which would have been only $4,120. Defendant presented a prima facie case of its damages, and plaintiff did not present evidence that Gardner's charges were unreasonable, or that defendant could have had the well finished at a lower price. Defendant is entitled to judgment of $2,975 together with the $300 charged by Gardner for moving its equipment to the site, for a total of $3,275 on its counterclaim.

■ Defendant also contends that the Court erred in granting judgment to plaintiff in the amount of $7,500 representing credits toward real property. Defendant argues that these amounts were to be paid in real property, and that the Court has made a new contract for the parties in granting a money judgment. But the evidence is undisputed that the parties never specified the real property to be conveyed in satisfaction of these amounts,[4] and plaintiff is entitled to payment for its services rendered prior to his breach of the contracts.

Finally, defendant argues that plaintiff did not plead or prove that he had a contractor's license at the time he entered into and performed this drilling work. Plaintiff proved at trial that he was licensed, and this argument is without merit.[5]

The dismissal of defendant's counterclaim is reversed, and this case is remanded to the District Court for Summit County with instructions to enter judgment in favor of defendant in the amount of $3,275 on its counterclaim. In all other respects the judgment is affirmed. Costs to defendant.

CROCKETT, C. J., and MAUGHAN, HALL and STEWART, JJ., concur.

---

**2.** That it is error for the Court to refuse to make a finding with respect to a material issue, see *Quagliana v. Exquisite Home Builders, Inc.,* Utah, 538 P.2d 301 (1975).

**3.** *Sprague v. Boyles Bros. Drilling Co.,* 4 Utah 2d 344, 294 P.2d 689 (1956).

**4.** The agreement with respect to conveyance of real property was merely an agreement to agree. See *Bunnell v. Bills,* 13 Utah 2d 83, 368 P.2d 597 (1962).

**5.** Unrebutted testimony at trial proved that plaintiff was licensed.